Filed 3/6/13  P. v. Miller CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ISAAC ANDREW MILLER,<br><br>      Defendant and Appellant. | A135161<br><br>(Contra Costa County<br>Super. Ct. No. 05-100198-1) |

Defendant Isaac Andrew Miller was convicted by a jury of three counts of oral copulation with a child 10 years old or younger (Pen. Code, § 288.7, subd. (a)), and was sentenced to three terms of 15 years to life in prison, with two of the terms to be served consecutively and one concurrently.  Miller's appeal raises challenges to standard jury instructions that he acknowledges prior published cases have rejected, seeks presentence conduct credits that are not disputed, and asks us to review sealed school records of the victim to determine whether the court erred when it declined to disclose them to the defense.  We follow the precedents upholding the jury instructions, and conclude there was no need for the court to disclose the school records.  We modify the judgment to award additional credits, and affirm the judgment as so modified.

## I.  BACKGROUND

The victim, Miller's son (Son), was six years old at the time of trial.  Miller shared custody of Son with Son's mother (Mother).  Son was staying with Miller on December 14, 2009, and talking with Mother on the phone when he said that Miller "puts his pee-pee in my mouth" and "makes me lick his pee."  Mother called the police and drove to

1

Miller's home.  Officers arrived, spoke with Miller, Mother and Son, and left without making an arrest.  Mother went home and left Son with Miller.

Son's preschool teacher (Teacher) testified that Mother called and asked her to talk to Son about the incident.  Son told Teacher that Miller put his "pee-pee in my mouth," and Teacher advised Mother against leaving Son in Miller's custody.  Miller confirmed to Mother that Son's reports were true, said that he had "random urges," and that for six months to a year he had been making Son lick his penis.  Mother called the police and Miller was arrested on the night of December 16.  Miller told the arresting officer that he had a "porn problem" and that, on five occasions, he had Son lick his penis while he was watching pornography and masturbating.  In a videotaped interview at the police station on the morning of December 17, Miller said he was addicted to pornography, and had Son lick his penis three to five times in the previous six months while he masturbated watching porn.

In a videotaped interview at the Children's Interview Center in Martinez (CIC) on December 21, Son said he had sucked his daddy's pee-pee at his daddy's house while there were pee-pees on the TV.  Son later told Mother that Miller had put his pee-pee in his butt, as well as his mouth, in the shower and in bed.  Mother called the prosecutor and, in another videotaped interview at the CIC in April 2010, Son said that Miller had put his pee-pee in his mouth and butt.  Teacher testified that Son talked daily about the molestations after he first reported them, and said that Miller had put his pee-pee in Son's mouth and butt.  Son testified at trial that Miller put his pee-pee in his mouth two-to-four times, and put his pee-pee in his butt once.

One of the officers who went to Miller's residence on December 14 testified for the defense that Mother told him Son was a special needs child with "a lot of issues." Mother said that Son had made up stories in the past.  She said that he had told her something about sucking his daddy's penis, but then said, "Joey from school did it."  Son told her that he was watching Superman all day and wanted to see the police.

Defendant denied molesting Son.  He testified that he never had Son lick his penis, or put his penis in Son's butt.  He said he told Mother and the police that he made Son

2

lick his penis because he thought doing so could get him help for his pornography addiction if he were incarcerated.

## II.  DISCUSSION

A.  <u>Instructional Issues</u>

Miller argues that the court erred in giving certain standard jury instructions.  But he acknowledges that his arguments "have not been received favorably by the California courts."  He believes they have arguable merit and is thus raising them here to preserve the issues for possible federal review.

(1)  <u>CALCRIM Nos. 301 and 1190</u>

The jury was instructed pursuant to CALCRIM No. 301:  "The testimony of only one witness can prove any fact.  Before you conclude that the testimony of one witness proves a fact, you should carefully review all of the evidence."  The jury was further instructed pursuant to CALCRIM No. 1190:  "Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone."  Miller argues that giving CALCRIM No. 1190 in addition to CALCRIM No. 301 improperly lightens the prosecution's burden of proof "[b]y propping up the testimony of a complaining witness in a sex offense case."

However, this argument was rejected in *People v. Gammage* (1992) 2 Cal.4th 693, 700-702, which addressed CALJIC Nos. 2.27 and 10.60, the predecessor instructions to CALCRIM Nos. 301 and 1190, and we are bound to follow that decision.  (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455.)

(2)  <u>CALCRIM No. 226</u>

Miller maintains that the court erred by instructing the jury with the following language from CALCRIM No. 226:  "If you decide that a witness deliberately lied about something significant in this case, you should consider not believing anything that witness says.  Or, if you think the witness lied about some things but told the truth about others, you may simply accept that part that you think is true and ignore the rest."  Miller submits that this instruction should not be given in a case where the defendant testifies. He reasons that because "[a] criminal defendant always in theory has a motive to lie . . .

3

the defendant consistently is the one witness to which the jury was likely to apply this instruction." He concedes that our Supreme Court rejected similar arguments against the predecessor instruction, CALJIC No. 2.21.2, but argues that CALCRIM No. 226 "encourages, more strongly than does CALJIC No. 2.21.2, a jury to reject the entire testimony of the defendant if it finds a material falsehood somewhere in his testimony."[1]

Miller also acknowledges that these contentions were rejected in *People v. Warner* (2008) 166 Cal.App.4th 653. The *Warner* court concluded that CALCRIM No. 226 and CALJIC No. 2.21.2 are both "facially neutral instructions that apply to all witnesses who testify at trial and that focus no more on the defendant's testimony than on that of any other witness." (*Warner, supra,* at p. 658.) Moreover, since the "semantic differences between CALCRIM No. 226 and CALJIC No. 2.21.2 are [not] even material, let alone prejudicial," the court "reject[ed the defendant's] challenge to the former by deferring to a long line of California Supreme Court cases rebuffing analogous challenges to the latter." (*Warner, supra,* at p. 659.) *Warner*'s analysis is persuasive, and dispositive of Miller's arguments against the use of CALCRIM No. 226 in this case.

## C. Conduct Credits

Miller was awarded 808 days of presentence credit for actual time served, but no presentence conduct credits. He renews his objection in the trial court to denial of the conduct credits. He argues, the People concede, and we agree that he is entitled to conduct credits for 15 percent of the actual period of confinement (see *People v. Brewer* (2011) 192 Cal.App.4th 457, 460-464; Pen. Code, §§ 2933.1, 667.5, subd. (c)(5), 288a, subd. (c)(1))—a total of 121 days in this case.

---

[1] CALJIC No. 2.21.2 states: "A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars."

D. Discovery of School Records

Son's preschool and kindergarten records were delivered to the court pursuant to defense subpoenas. Defense counsel explained in an in camera hearing why the documents might be relevant to the case, and the court found good cause to review the documents in camera. During that review, the court found "nothing to disclose."

Miller asks us to review the documents and the transcript of the in camera hearing to determine whether the documents were material to the defense, and the court abused its discretion when it declined to disclose them. (See *Hill v. Superior Court* (1974) 10 Cal.3d 812, 816 [a request for discovery by an accused is addressed to the sound discretion of the trial court]; *People v. Martinez* (2009) 47 Cal.4th 399, 453 [confidential records are material if it is reasonably probable that the outcome would have been different if they had been disclosed to the defense].)

We have done so, and confirmed that the court could reasonably find that the documents were immaterial to Miller's defense. Denying defense access to the documents was neither erroneous nor prejudicial.

### III. DISPOSITION

The judgment is modified to award Miller 121 days of presentence conduct credit in addition to 808 days of presentence credit for time actually served. As so modified, the judgment is affirmed. The trial court is directed to prepare and forward an amended

abstract of judgment reflecting the modification to the Department of Corrections and Rehabilitation.

_____

Siggins, J.

We concur:

_____

McGuiness, P.J.

_____

Pollak, J.